PHILIP H. KALBAN
**PUTNEY, TWOMBLY, HALL & HIRSON LLP**
*Attorneys for Defendants Time Square Construction, Inc.,*
*HDK Construction, LLC, and Kevin O'Sullivan*
521 Fifth Avenue
New York, New York 10175
Tel: (212) 682-0020
Fax: (212) 682-9380
pkalban@putneylaw.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **TERRENCE MOORE, et al.,** | |
| **Plaintiffs,** | |
| - against - | 1:14-cv-08326 (CM)(JLC) |
| **NAVILLUS TILE, INC., et al.,** | |
| **Defendants.** | |
| **THOMAS GESUALDI, et al.,** | |
| **Plaintiffs,** | |
| - against - | 1:15-cv-08441 (CM)(JLC) |
| **NAVILLUS TILE, INC., et al.,** | |
| **Defendants.** | |

**TRIAL MEMORANDUM OF DEFENDANTS**
**TIME SQUARE CONSTRUCTION, INC.,**
**HDK CONSTRUCTION, LLC, AND**
**KEVIN O'SULLIVAN**

## TABLE OF CONTENTS

Summary of Facts ............................................................................................................... 1

Argument .............................................................................................................................. 5

   I.    Separate Alter Ego Determinations Must Be Made For Each Entity ............................. 5

   II.   Time Square As A Non-Union Subcontractor On Sugar Hill Gained No
        Economic Advantage Over A Subcontractor Subject To A Cba ................................. 10

   III.  Time Square And Navillus Had Different Business Purposes ...................................... 11

   IV.  No Sham Transaction Or Technical Change In Operations ........................................... 12

   V.   None Of The Second Circuit Alter-Ego Factors Is Present In This Case ..................... 13

   VI.  Plaintiffs Have No Viable Claims Against Kevin Individually ..................................... 19

   VII. The 2009 Agreement Precludes Plaintiffs From Claiming Time Square
        Is An Alter Ego Of Or Joint Or Single Employer  With Navillus ................................. 20

Conclusion ......................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Armen Digital Graphics, Ltd.*,
   No. 96 Civ 5844, 1997 WL 458738 (S.D.N.Y. Aug. 12, 1997) ...........................13, 14, 15, 16

*Blue & White Cabs*,
   291 NLRB 1047 (1988) ...................................................................................................14

*Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal
   Services Fund and Annuity Fund v. Lollo*, 35 F.3d 29 (2d Cir. 1994)..................................20

*D'Arata v. New York Central Mutual Fire Insurance Co.*,
   76 N.Y.2d 659 (1990) ....................................................................................................20

*Kurlan v. Commissioner*,
   343 F.2d 625 (2d Cir. 1965)............................................................................................21

*Lihli Fashions Corp. v. NLRB*,
   80 F.3d 743 (2d Cir. 1996)..................................................................................... *passim*

*Local 812 GIPA v. Canada Dry Bottling Co. of New York*,
   2000 WL 1886616, 142 Lab. Cas. P10,870 (S.D.N.Y. 2000) ..........................................11, 14

*Local Union No.38, Sheet Metal Workers' Intern. Ass'n, AFL-CIO v. A & M
   Heating*,
   314 F. Supp. 2d 332 (S.D.N.Y. 2004)...........................................................................16, 17

*Lummus Co. v. Commonwealth Oil Ref. Co.*,
   297 F.2d 80 (2d Cir. 1961)..............................................................................................21

*Marino Elec., Inc.*,
   285 N.L.R.B. 344 (1987) .........................................................................................16, 17, 18

*Mason Tenders Dist. Council Welfare Fund v. Kan Klean Industrial, Inc.*,
   1996 WL 447751 (S.D.N.Y. 1996)...............................................................................14, 16, 18

*Mason Tenders Dist. Council Welfare Fund v. Itri Brick and Concrete Corp.*,
   No. 96 Civ. 6754, 1997 WL 678164 (Oct. 31, 1997) ............................................................21

*Moore v. Navillus Tile, Inc.*,
   14-civ-8326 ..................................................................................................................5, 6

*Moore v. Navillus Tile, Inc.*,
   2016 WL 750797 (S.D.N.Y. Feb. 24, 2016)...............................................................5, 6, 7, 10

*Murray v. Miner*,
   74 F.3d 402 (2d Cir. 1996).................................................................................6

*Nationwide Mutual Insurance v. U.S. Underwriters Insurance Co.*,
   2017 NY Slip Op 04774 (June 13 2017) (1st Dep't) ...........................................21

*New York State Teamsters Conference Pension and Retirement Fund v. Express Services, Inc.*,
   426 F.3d 640 (2d Cir. 2005)..................................................................11, 15, 17

*Newspaper Guild of N.Y. v. NLRB.*,
   261 F. 3d 291 (2d Cir. 2001)............................................................................19

*Ref Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.*,
   629 F.3d 282 (2d Cir 2010)..............................................................................12

*Stardyne, Inc. v. NLRB*,
   41 F.3d 141, 151 (3d Cir. 1994)........................................................................11

*Time Square Const., Inc. v. Mason Tenders Dist. Council of Greater N.Y. & Long Island*,
   2008 WL 55116 (S.D.N.Y. Jan. 2, 2008) ......................................................14, 21

*Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Cooperation, Pension and Welfare Funds v. JJJ Concrete Corp.*,
   2015 WL 790085 (E.D.N.Y. 2015).......................................................... *passim*

*Trustees of the Plumbers and Pipefitters National Pension Fund v. De-Con Mech. Contractors, Inc., 896 F. Supp. 342 (S.D.N.Y. 1995)* ..........................................20

*Trustees of the United Health and Welfare Fund v. N. Kofsky & Son, Inc.*,
   2015 WL 59173 ...........................................................................15, 16, 17, 18

*United States v. Walker*,
   No. 16 CR. 567 (JSR), 2017 WL 877325 (S.D.N.Y. Mar. 5, 2017)........................21

*United Union of Roofers, Waterproofers, & Allied Workers Local No. 210, AFL-CIO v. A.W. Farrell & Son, Inc.*,
   547 Fed. Appx. 17 (2d Cir. 2013) (Summary Order) .......................................6, 17

*United Union of Roofers, Waterproofers, Allied Workers, Local No. 210, AFL-CIO v. A.W. Farrell & Son, Inc.*,
   2012 WL 4092598 (W.D.N.Y. 2012) ..................................................... *passim*

Defendants Time Square Construction, Inc. ("Time Square"), HDK Construction, LLC, and Kevin O'Sullivan ("Kevin") (collectively the "Kevin Defendants") respectfully submit this trial memorandum.

Simply stated, the plaintiffs will not be able to meet their burden of proof on any of their claims for relief against the Kevin Defendants because, as the facts will demonstrate, Time Square and HDK were never alter egos of (or joint or single employers with) Navillus Tile, Inc. These were and are Kevin's companies, and no one else had or has any control over them or their operations.

## Summary of Facts

The direct testimony of the three witnesses for Time Square and HDK, Kevin, Thea Clarke and Martin Dooley, has already been submitted and will not be repeated here.  They will testify, in brief summary, as follows:

Time Square from its inception in 2006 has been an independent business controlled solely by Kevin.  Time Square has never competed with Navillus or ACS.

At all relevant times (April 2012 to present), Kevin has been the sole owner, sole corporate officer and sole director of Time Square and the affiliated but separate and independent company HDK.

In 2008, the Southern District of New York, Hon. Shira A. Scheindlin, held that Time Square was not an alter ego, joint employer, single employer or double-breasted operation with Navillus (DX 141, the "Scheindlin Decision").

By written "Settlement Agreement and Release" (DX 29), executed in February 2009 (the "2009 Agreement") by each of the unions affiliated with each of the plaintiff benefit funds herein, the unions withdrew all cases, charges, appeals and remands of appeals against Time

Square by which the unions had alleged that Time Square was an alter ego, joint employer, single employer or double breasted operation with Navillus and agreed to withdraw the appeal from the Scheindlin Decision, thereby making the Scheindlin Decision a final order and judgment.  The 2009 Agreement contained a release from "each of the Building Trades Entities" to Time Square.

Each of the plaintiff funds here is in privity with its respective union.  The funds exist through and received their contributions by reason of the collective bargaining agreements. (Stipulated Fact D4).  Each of the plaintiff funds is bound by the terms of the 2009 Agreement and the Scheindlin Decision.

The claims of the plaintiff funds against the Kevin Defendants all stem from a single job called "Sugar Hill."  Sugar Hill was the only project on which Time Square, or HDK for that matter, ever performed concrete construction work.  Sugar Hill accounted for less than 5% of Time Square's income as a general contractor.

The general contractor on Sugar Hill, Mountco, refused to hire a union subcontractor. Neither Navillus nor Time Square had anything to do with that decision.  Moreover, Sugar Hill was a prevailing wage job, so Time Square had to pay the same benefits to the employees as if it were a union job.  Thus, there was no economic benefit and no attempt to avoid the obligations of a collective bargaining agreement.  There was certainly no sham transaction because Navillus had already bid for the Sugar Hill job and been rejected.  At the time of Sugar Hill, Time Square had already been in business as a general contractor for a half-dozen years.  After Sugar Hill, Time Square has operated solely as a general contractor and has never performed any concrete foundation or superstructure work.

After Navillus' bid was rejected, Donal O'Sullivan did suggest to his brother Kevin that Time Square might want to bid on the Sugar Hill project, and after Time Square's bid was accepted, Donal did, at Kevin's request, provide limited advice and recommendations, all of it before the contract between Mountco and Sugar Hill was signed.

At the time of the Sugar Hill contract, and at all times since, Kevin was the sole shareholder/owner of Time Square.  Donal O'Sullivan had no ownership interest.  Kevin's buy-out of Donal's interest was negotiated in 2011 and signed in January 2012, more than three months before Navillus' Sugar Hill bid was submitted and rejected and before Time Square had even heard of Sugar Hill.

For insurance purposes, HDK was utilized initially just to be the payroll company for Time Square first for its Two Fifth Avenue and then for its Sugar Hill projects.  Only later did Kevin decide to use HDK as an independent, stand-alone company to pursue subcontract work—but never for concrete construction work.  At all times, Kevin has been the sole owner and officer of HDK.

Kevin has played no controlling or supervisory role at Navillus since early 2006.  He never had anything to do with concrete construction at Navillus, having run its interior stone and tile division.  Kevin never had anything whatsoever to do with ACS.  He never made any representations regarding fund contributions.  Kevin has no liability under any of the plaintiffs' claims.

Time Square does not share common management with Navillus or ACS.  Time Square is managed by Kevin O'Sullivan and Fergal Conefrey.  HDK is managed by Kevin O'Sullivan and Martin Dooley.  None of these people has or had while employed by Time Square any managerial role at Navillus or ACS.  No one at Navillus or ACS has or had any managerial role

3

at Time Square.  No one at Navillus or ACS issues or has authority to issue checks for Time

Square or HDK, and no one at Time Square or HDK issues checks for Navillus or ACS.

Time Square does not share common supervision with Navillus or ACS.   No one with

authority to hire, fire or discipline employees at Navillus or ACS ever had the same authority

simultaneously at Time Square of HDK.  After 2006, Kevin O'Sullivan had no supervisory

powers at Navillus and never had any such powers at ACS.  Donal O'Sullivan never had such

authority at Time Square or HDK.

Time Square does not share common employees with Navillus or ACS.  Time Square and

HDK have separate payrolls and work crews from Navillus and ACS.  At no time has any person

on the Navillus or ACS payroll ever simultaneously been an employee of Time Square or HDK.

John Kuefner through his consulting company consulted for ACS after he was no longer a

consultant for Time Square or HDK.  Although Kuefner was called upon to help resolve punch

list matters after Time Square's Sugar Hill subcontract was completed, he was no longer a paid

consultant to either Time Square or HDK at that time.  Out of more than 1,000 HDK employees,

one person, Eoin Moriarty through his consulting company, consulted for HDK while he was an

employee of Navillus.  One consultant does not an alter ego make.

Time Square does not share common operations with Navillus or ACS.  Time Square

files its own tax returns, has its own financial statements, has its own bank accounts in different

institutions for Navillus, and has no overlapping operations with either Navillus or ACS.  At no

time did Navillus or ACS pay for any of Time Square's bills or vice versa.

Time Square does not share common equipment or vendors with Navillus or ACS.  There

have never been any informal leasing arrangements between Time Square or HDK and either

Navillus or ACS.  Once when Time Square bought some equipment and materials from Navillus,

Time Square borrowed a Navillus truck to deliver that equipment to the Time Square site.  Time Square was invoiced for and paid for the equipment.  Such arms-length transactions do not make Time Square an alter ego of or joint employer with Navillus.

Time Square does not share common customers with Navillus or Time Square.  Time Square's customers are owners/developers.  Navillus and ACS's customers are general contractors.

Plainly, Time Square was not created for the express purpose of avoiding Navillus' obligations under its collective bargaining agreements, and neither Time Square nor HDK is an alter ego, joint employer, single employer, or double-breasted operation with Navillus.

## **Argument**

### I.   **SEPARATE ALTER EGO DETERMINATIONS MUST BE MADE FOR EACH ENTITY**

It is law of the case that "separate alter ego determinations must ultimately be made for each entity…."  *Moore v. Navillus Tile, Inc.*, 14-civ-8326 McMahon, U.S.D.J. (S.D.N.Y. Jan. 3, 2017) (the "*Moore Severance Decision*") at 7-8, citing *Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 748 (2d Cir. 1996).

Thus, this court must make separate and independent evidentiary findings relating to Time Square, HDK and Kevin O'Sullivan (collectively, the "Time Square Defendants"), separate and apart from any alleged relationship between Navillus and ASC.   Plaintiffs cannot and will not at trial be able to meet their burden of proof  to demonstrate by a preponderance of the credible evidence that any of the Time Square Defendants meet the criteria for an alter ego, double-breasted employer or single employer with Navillus or any other company.

Plaintiffs have contended that this court in denying Defendants' motions for summary judgment, *Moore v. Navillus Tile, Inc.*, 2016 WL 750797 (S.D.N.Y. Feb. 24, 2016) (the "*Moore*

*SJ Decision*"), has predetermined the outcome of this case.  This court in the *Moore SJ Decision* simply found that "[v]iewed collectively, Plaintiffs have presented specific facts signifying that there are genuine issues of fact as to whether Time Square and ACS are alter egos of Navillus." *Id.* at 20.  At trial, Plaintiffs must prove separately as against each corporate defendant each element of their claims by a preponderance of the credible evidence, and the court will no longer be bound to view the allegations "in the light most favorable to Plaintiffs…," as it was on the summary judgment motion.  *Id.*

In a 2013 decision, *United Union of Roofers, Waterproofers, & Allied Workers Local No. 210, AFL-CIO v. A.W. Farrell & Son, Inc.*, 547 Fed. Appx. 17 (2d Cir. 2013) (Summary Order), the Second Circuit, citing *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996), stated:

> In *Murray*, we observed that the single employer doctrine is "an exception to the doctrine of limited liability, which allows corporations to organize so as to isolate liabilities among separate entities." *Id.* [74 F.3d ] at 405.  We also observed that "the law only treats the employees of a corporate entity as the employees of a related entity under *extraordinary* circumstances." *Id.* at 404.

547 Fed. Appx. at 19 (emphasis added).

The Second Circuit in *Murray* recognized that the law treats employees of one corporate entity as employees of another only under "extraordinary circumstances."  74 F.3d at 405.

As this court stated in its decision denying Defendants' motions for summary judgment in this action, *Moore v. Navillus Tile, Inc.*, 2016 WL 750797 (S.D.N.Y. Feb. 24, 2016) (the "*Moore SJ Decision*"):  "'The focus of the alter ego doctrine … is on the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction ….'"  *Moore SJ Decision* at 15, 2016 WL 750797 at *7 (citation omitted).  The alleged "sham" transactions in which Time Square was involved are separate, unique and unrelated to the transactions alleged against ACS.  The court applying the test of alter ego status

must "weigh the circumstances of the *individual* case…." *Id.*  (emphasis added, citation omitted).

Thus, the court may not consider the facts and circumstances that Plaintiffs assert constitute a

basis for considering ACS to be an alter ego of Navillus together with the facts and

circumstances that plaintiffs assert make Time Square an alter ego of Navillus.

As this court recognized, it must analyze "whether the two enterprises have substantially

identical management, business purpose, operation, equipment, customers, supervision, and

ownership."  *Id.* (citation and internal quotation marks omitted).  Thus, when analyzing whether

Time Square is an alter ego of Navillus, the court must consider only the facts and circumstances

relating to Time Square, and not those relating to ACS.

Plaintiffs want this court to find that ACS is an alter ego of Navillus and also to find that

Time Square is an alter ego of Navillus.  ACS and Time Square are separate entities operating

independently.  The jobs/projects on which Time Square employed workers who engaged in the

trades represented by any of the unions participating in the plaintiff funds are totally separate and

independent from any in which ACS was the concrete construction subcontractor.

The Second Circuit made clear in *Lihli Fashions Corp. v. National Labor Relations

Board*, 80 F.3d 743, 748 (2d Cir. 1996), that claims of alter ego status against two non-union

corporations had to be proven separately against each of the them.  The NLRB had found that the

two non-union shops, Liyan and Lihli, Inc., were alter egos of union-shop King Kuo.  The

Second Circuit reversed: "Although … Liyan is the 'alter ego' of … King Kuo, petitioners

contend that Lihli, Inc. does not hold the same status.  We agree."  "While Liyan is … the alter

ego of … King Kuo, Lihli, Inc. cannot be so characterized.  True, they all share common

ownership and management, but the record indicates that Lihli, Inc. has a business purpose

completely different from Liyan and … King Kuo."  *Id.* at 749.  The Second Circuit examined

and determined separately and independently the relationships between the unionized company and each of the non-union companies claimed to be alter egos. Likewise here, the court must separately consider and independently determine the plaintiffs' claims (a) that ACS is an alter ego of Navillus; (b) that Time Square is an alter ego of Navillus; and (c) in the Gesualdi case, that HDK is an alter ego of Navillus.

Time Square has been in business since 2006 as a general contractor, a business that is so obviously different from that of Navillus that plaintiffs do not include any of Time Square's numerous projects in their damage calculations, save one (Sugar Hill). From 2006 to 2012, by plaintiffs' admission, Time Square was not an alter ego of Navillus. In 2012, Time Square took its only job (Sugar Hill) as a subcontractor doing foundation and superstructure concrete work. It has done none since, though it continues to operate as a general contractor. Apparently plaintiffs believe that Time Square was a temporary alter ego of Navillus while it was performing the work on Sugar Hill in 2012-13.

This theory is totally at odds with that against ACS, which plaintiffs allege was an alter ego of Navillus from inception to date. Plaintiffs include every project ACS has done in their damage calculations. For ACS, plaintiffs list some 18 projects and 27 subcontracts; for Time Square, *one*. Time Square was formed and began operations as a general contractor in 2006. ACS was formed and began work as a concrete subcontractor in 2013. (Gesualdi Complaint, ¶¶ 95, 97.) Plaintiffs assert that the "Defendant Companies employ carpenters, lathers, concrete laborers and truck drivers to engage in concrete construction projects." (*Id.* ¶ 53.) Plaintiffs then list 7 jobs where Navillus was the concrete construction subcontractor (*Id.* ¶ 56), 10 jobs where ACS was the concrete construction subcontractor (*Id.* ¶ 57), and one job at 400 W. 155th Street

(Sugar Hill) where Time Square was the concrete construction subcontractor. The Sugar Hill job is absent from the list of ACS projects, *i.e.*, it is a separate, independent transaction.

Clearly, the conduct allegedly creating Time Square as or causing Time Square to be an alter ego of Navillus was not part of any transaction or conduct or occurrence allegedly creating ACS as or causing ACS to be an alter ego of Navillus.

In their expert's report, the Moore plaintiffs assert that ACS performed 1,561,695 work hours for which plaintiffs are entitled to fund contributions; for Time Square, 52,650 work hours- -3% of the ACS hours. Any analysis of the factors to be considered in addressing alter ego or single employer claims requires that the court apply those factors independently to each entity. For example, to determine the interrelation of operations between Navillus and Time Square, the court cannot consider any involvement by Navillus in the operations of ACS. Evidence regarding whether ACS and Navillus might comprise a single appropriate bargaining unit cannot be used to wrap Time Square into a determination of single employer status. Except for a year-and-a-half of Time Square's 10-year existence, Time Square and HDK employed *no* workers in the concrete construction trades.

Likewise, in determining commonality of management, business purpose, operations, equipment, customers, supervision and ownership (*id.*), the court must separately assess the evidence with respect to the Navillus-Time Square relationship and the Navillus-ACS relationship.

As the Moore Plaintiffs readily conceded in opposing the Kevin Defendants' motion to sever, the Second Circuit requires "that distinct alter ego determinations must be made for each alleged alter ego…." Moore Brief at 1. The Gesualdi Plaintiffs concurred: "Plaintiffs do not

dispute that the Court will have to make separate determinations as to whether ACS and Time Square are alter-egos of Navillus…."  Gesualdi Brief at 5.

Time Square was created in early 2006 as a *general contractor*, not a concrete subcontractor like Navillus.  Time Square operated exclusively as a GC for more than 6 years before taking on its sole job as a concrete subcontractor—Sugar Hill, a *prevailing wage* job which provided *no* economic advantage to Time Square over a union subcontractor—in April of 2012.  Thus, it is impossible that Time Square was "created for the express purpose of avoiding Navillus's obligations under its CBAs."  *Moore SJ Decision* at 3 (reciting the "gravamen of the Plaintiffs' complaint…".)

Plaintiffs try to jumble Time Square's Sugar Hill project with ACS's Boston Road project because they happen to have involved the some general contractor.  Moore Brief at 2. There is not a single piece of evidence or allegation that Time Square had anything to do with Boston Road or any other of the 18 ACS concrete subcontract jobs.

## II. TIME SQUARE AS A NON-UNION SUBCONTRACTOR ON SUGAR HILL GAINED NO ECONOMIC ADVANTAGE OVER A SUBCONTRACTOR SUBJECT TO A CBA

The determination to go open shop, *i.e.*, non-union, on Sugar Hill was that of the general contractor/developer, Mountco Construction & Development Corp.  Neither Navillus nor Time Square had anything to do with that decision.  Because Sugar Hill was a public project, it was subject to prevailing wage requirements, and each of the subcontracts for that project so provided.  By statute as well as New York State and City regulations, subcontractors on a prevailing wage job are required to pay salaries and fringe benefits virtually identical to those required under the local collective bargaining agreements of the relevant trades.  Thus, there is no economic benefit to a subcontractor, such as Time Square on Sugar Hill, to going non-union.

The decision to go open shop was that of the general contractor and developer, who had determined not to retain a union concrete subcontractor.

Accordingly, Time Square's pursuit of the Sugar Hill concrete subcontract was not and could not have been "an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations," which is the "focus of the alter ego doctrine…." *Lihli Fashions Corp. v. National Labor Relations Board*, 80 F.3d 743, 748 (2d Cir. 1996) (internal citations omitted). *See also, Local 812 GIPA v. Canada Dry Bottling Co. of New York*, 2000 WL 1886616, 142 Lab. Cas. P10,870 (S.D.N.Y. 2000) ("The Second Circuit has held that … '[t]he focus of the alter ego doctrine…is on "the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations'").

"The main focus of the [alter-ego] inquiry is to determine whether the two employers are the same business in the same market." *New York State Teamsters Conference Pension and Retirement Fund v. Express Services, Inc.*, 426 F.3d 640, 650 (2d Cir. 2005) (citing *Stardyne, Inc. v. NLRB*, 41 F.3d 141, 151 (3d Cir. 1994).

### III.  TIME SQUARE AND NAVILLUS HAD <u>DIFFERENT BUSINESS PURPOSES</u>

Except for the brief period during 2012-13 (Sugar Hill), Time Square has been solely a general contractor.  Time Square's one venture into the world of concrete construction as a subcontractor was on a public project where the general contractor refused to retain a union subcontractor.

Plainly, Navillus and Time Square had different business purposes.  As a general contractor from 2006 to the present, Time Square operated and operates in a wholly different sphere than Navillus.  Time Square dealt and deals with owner/developers for its contract and

11

then engaged subcontractors.  Navillus, as a concrete subcontractor, dealt with general

contractors for its subcontract.  With respect to Sugar Hill, the concrete subcontract was not

available to Navillus because the general contractor refused to retain a union concrete

subcontractor.  For whatever reason, Mountco as the Sugar Hill developer and general contractor

decided to hire only open shop subcontractors.   Indeed, Navillus' proposal for the concrete

foundation and superstructure was rejected for that very reason.

Time Square could not have been attempting to avoid the obligations of a collective

bargaining agreement because the general contractor had determined that it would not engage a

subcontractor that was subject to the obligations of a collective bargaining agreement.  *Lihli*, 80

F.3d at 748.  Just as significant, Time Square could not have been a "disguised continuance" (*id.*)

of Navillus because Navillus had already sought and been rejected for the Sugar Hill subcontract.

## IV.   NO SHAM TRANSACTION OR
## TECHNICAL CHANGE IN OPERATIONS

"The purpose of the alter-ego doctrine in the ERISA context is to prevent
an employer from evading its obligations under the labor laws through a sham
transaction or technical change in operations."  *Ref Plan of UNITE HERE Nat'l
Ret. Fund v. Kombassan Holding A.S.,* 629 F.3d 282, 288 (2d Cir 2010) (quoting
*Newspaper Guild of N.Y. v. NLRB.,* 261 F. 3d 291, 298 (2d Cir. 2001)).

*Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Cooperation,*

*Pension and Welfare Funds v. JJJ Concrete Corp*., 2015 WL 790085, *9 (E.D.N.Y. 2015).

Time Square had operated for more than six years as a general contractor at the time it

entered into the Sugar Hill subcontract.  Thus, Time Square certainly was *not* a "technical

change in operations" from Navillus.  Obviously, the creation of Time Square to be a general

contractor with separate offices, management, financing, etc. from Navillus was not a "sham

transaction."  Likewise, the Sugar Hill subcontract was not and could not have been a sham

transaction in that it was the general contractor that determined not to use a union subcontractor and accepted Time Square's bid for the concrete subcontract.

## V.   NONE OF THE SECOND CIRCUIT ALTER-EGO FACTORS IS PRESENT IN THIS CASE

As stated by the Second Circuit:  "The 'hallmarks of the alter-ego doctrine include "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." ' " *Lihli*, 80 F.3d at 748 (citations omitted).

The impossibility of Plaintiffs establishing these factors here is virtually the same as was found in *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Co-op., Pension and Welfare Funds v. JJJ Concrete*, 2015 WL 790085 at *9 (E.D.N.Y. 2015):

> Here, none of the factors is present in this case.  Nothing in the record, for instance, suggests that Defendants share the same management, supervision, equipment, vehicles or customer base. Similarly, Defendants never comingled bank accounts or any other kind of financial accounts.  Moreover, the companies are separately owned.  Although family connections between two corporations can be used to satisfy the common ownership requirement, that is only true provided the other factors are also satisfied.  *Mason Tenders Dist. Council Welfare Fund v. Itri Brick and Concrete Corp.,* No. 96 Civ. 6754, 1997 WL 678164, at *14 (Oct. 31, 1997), *see also In re Armen Digital Graphics, Ltd.,* No. 96 Civ 5844, 1997 WL 458738 at *7 n. 9 (S.D.N.Y. Aug. 12, 1997) ("Were courts to assume alter ego status merely from the closely held ownership of two companies by members of the same immediate family, families would be effectively precluded from organizing their business affairs in any but a single corporate entity.  Children would be barred from creating companies distinct from those owned by their parents.  The alter ego doctrine does not compel these results.").

Time Square and Navillus do not have substantially identical ownership.  Donal O'Sullivan is the 100% owner of Navillus and has been since 2015.  Kevin is the 100% owner of Time Square and has been since April 1, 2012 pursuant to a January 2012 contract.  No one other

13

than Kevin has had any ownership interest in Time Square at any time relevant to this action.

*United Union of Roofers, Waterproofers, Allied Workers, Local No. 210, AFL-CIO v. A.W. Farrell & Son, Inc.*, 2012 WL 4092598 (W.D.N.Y. 2012)  at *13; *In re Armen Digital Graphics Ltd. v. Amalgamated Lithographers of America, Local One*, 1997 WL 458738, at *7 n.9 (S.D.N.Y. 1997) ("Were courts to assume alter ego status merely from the closely held ownership of two companies by members of the same immediate family, families would be effectively precluded from organizing their business affairs in any but a single corporate entity"); *Mason Tenders Dist. Council Welfare Fund v. Kan Klean Industrial, Inc.*, 1996 WL 447751 (S.D.N.Y. 1996) (no substantially identical ownership where the majority owner of the alleged alter ego was non-controlling owner of the original company); *Blue & White Cabs*, 291 NLRB 1047 (1988) (changes in ownership over time are relevant to analysis); *see also Time Square Const., Inc. v. Mason Tenders Dist. Council of Greater N.Y. & Long Island*, 2008 WL 55116, at *6 (S.D.N.Y. Jan. 2, 2008) (common ownership alone not sufficient for an alter ego finding).

Time Square's or HDK's retention in 2012 of two former Navillus employees as independent contractors through their consulting companies to provide mid-level managerial services and one then-current Navillus employee as a part-time consultant to insure Time Square and HDK were complying with their prevailing wage requirements simply do not establish that Navillus and Time Square had substantially identical management or supervision.  *Canada Dry Bottling Co. of N.Y.*, 2000 WL 1886616, at *4 (S.D.N.Y. Dec. 29, 2000) ("[T]he mere transfer of low and middle managers does not establish an identity in the management … sufficient to support alter ego status").

Time Square does not share a common business purpose with Navillus or ACS.  Time Square is a general contractor for private owners/developers.  Neither Navillus nor ACS ever performs or performed in such capacity.

To demonstrate substantially identical business purposes, it is not sufficient for two entities to operate in the same broadly defined industry; rather, they must deal in the same product or service in the same market.  *A.W. Farrell*, 2012 WL 4092598, at *14-15 (finding two roofing companies that performed different roofing services using different roofing techniques not alter egos); *Express Servs.*, 426 F.3d at 650 (no common business purpose where companies "engaged in different, though related, lines of business within the freight transportation industry"); *Armen Digital Graphics, Ltd., Amalgamated Lithographers of Am., Local One*, 1997 WL 458738 (S.D.N.Y. Aug. 12, 1997) (holding that two companies that performed work in the lithography industry had separate business purposes and were not alter egos because they used different methods to create their products); *Trustees of the United Health and Welfare Fund v. N. Kofsky & Son, Inc.*, 2015 WL 59173 at *10 S.D.N.Y. 2015) (while both companies performed plumbing work, they had separate business purposes where one company performed complete renovations whereas alleged alter ego's work was much more limited in scope); *JJJ Concrete Corp.*, 2015 WL 790085, at *10 (finding "scant evidence that Defendants share the same business purpose" because even though "both Defendants may lay concrete, that is where the similarity ends").

In bifurcated markets where union and non-union entities generally compete for different jobs, they do not have substantially identical business purposes because they do not operate in substantially the same market.  *A.W. Farrell*, 2012 WL 4092598, at *14-15 (finding non-union roofing contractor had a separate business purpose and was not an alter ego of a union roofing

15

contractor in part because the union contractor "derives a substantial portion of its income from . . . contracts subject to prevailing wage requirements," which the non-union contractor never sought or performed); *Marino Elec., Inc.*, 285 N.L.R.B. 344, 354-55 (1987) (holding that a non-union electrical contractor was not an alter ego of a union electrical contractor because the two contractors operated in different markets and were not competitors).

Navillus and Time Square do not have substantially identical operations. Time Square and Navillus each have separate offices and facilities with independent telephone and computer systems, separate employees, their own support staffs, separate payroll management and business systems, file their own taxes, have separate financial statements, keep separate insurance policies, maintain separate corporate forms and records, keep separate accounts at different banks, and independently contract for professional services, among other distinctions. *Local Union No.38, Sheet Metal Workers' Intern. Ass'n, AFL-CIO v. A & M Heating*, 314 F. Supp. 2d 332, 349 (S.D.N.Y. 2004) (operations not identical where entities had separate facilities); *N. Kofsky*, 2015 WL 59173, at *10 (separate bank accounts and leases); *JJJ Concrete Corp.*, 2015 WL 790085, at *9 ("Defendants never comingled bank accounts or any other kind of financial accounts" and did not share insurance).

Time Square and Navillus at one point had *adjacent* yards separated by a ten-foot high fence at a location where they had separate leases. Time Square also assumed the lease on a yard in New Jersey *after* Navillus ceased using the facility. Neither is sufficient to establish substantially identical operations. *Kan Klean*, 1996 WL 447751 (adjacent offices did not support alter ego finding); *A.W. Farrell*, 2012 WL 4092598 at *13 (rent-free use of facility owned by owner of union shop did not establish identical operations); *Armen*, 1997 WL 458738, at *7, *9 (*shared* offices did not establish substantially identical operations); *JJJ Concrete Corp.*, 2015

16

WL 790085, at *8-9 (no shared operations despite use of shared yard, office space, telephone and fax number); *N. Kofsky*, 2015 WL 59173, at *10 (companies that had "separate leases for [a] shared office space" not alter egos); *see also Express Servs.*, 426 F.3d at 650 ("Nor are the Fund's allegations of a common mailing address and shared management sufficient by themselves to raise a triable issue of fact.").  Further, since November 1, 2006, Time Square has been located at 355 Lexington Avenue in Manhattan, a space never shared with Navillus (or ACS).

Nor is it probative that Time Square and Navillus have utilized common institutions for professional services, such as accountants, attorneys, or insurance brokers.  *JJJ Concrete Corp.*, 2015 WL 790085, at *7-10 (shared accountant and "some suppliers" did not establish any alter ego factors); *N. Kofsky*, 2015 WL 59173, at *11 (same).

Time Square and Navillus do not share substantially identical equipment.  They have never shared equipment or treated equipment interchangeably.  Rather, Time Square purchased two vehicles and $40,000 worth of scaffolding from Navillus at fair market value, after which transfer was complete.  *A.W. Farrell*, 547 F. App'x at 21 (even where one company provided substantially all of another company's equipment "free of charge" this did not support an alter ego finding where "the transfer was complete, i.e., the companies did not thereafter share the equipment."); *Marino Elec.*, 285 N.L.R.B. at 353-54; *A&M Heating*, 314 F. Supp. 2d at 349; *N. Kofsky*, 2015 WL 59173, at *5.  That Time Square used a Navillus truck for the sole purpose of delivering the scaffolding it had just bought from Navillus does not constitute sharing equipment.

Time Square and Navillus have never shared customers, and the fact that Time Square only learned of  and bid on the Sugar Hill project after Navillus was told it had been rejected for the project only further demonstrates the nonexistence of overlap in customers.  *N. Kofsky*, 2015

WL 59173, at *11 ("some overlap" in clients did not support alter ego finding); *JJJ Concrete Corp.*, 2015 WL 790085, at *8-10 (concrete companies not alter egos where they did not share customers; companies "do not, and cannot, cater to the same clients"); *Marino Elec.*, Inc., 285 NLRB 344 (1987) (no alter ego where entities shared roughly 50% of customers). Even on Time Square's first two jobs when Time Square as general contractor hired Navillus as the concrete construction subcontractor, Time Square and Navillus did not have the same customer. As general contractor, Time Square's customer was the owner/developer. As concrete construction subcontractor, Navillus' customer was the general contractor, Time Square. With Time Square actually hiring Navillus as a subcontractor, they could not possibly be alter egos, nor could Plaintiffs have any complaint in that Navillus used only union workers and made all required benefit fund contributions.

There is no evidence that Kevin O'Sullivan, a former union tradesman himself, has any anti-union animus. Kevin O'Sullivan's desire to run a non-union company is both legal and, without considerably more, is not indicative of animus. *Marino Elec., Inc.*, 285 NLRB 344 (1987); *Kan Klean Indus.*, 1996 WL 447751 (mere fact that owner of former union company formed non-union company does not evidence animus); *JJJ Concrete Corp.*, 2015 WL 790085, at *10 ("[T]here is no evidence that [non-union concrete company] was formed to overtake [union concrete company's] customer base").

In sum, Time Square is not the disguised continuance of Navillus. *Lihli Fashions*, 80 F.3d at 748. Time Square was created over ten years ago with a wholly separate purpose from Navillus: to serve as a general contractor on private, new development work, which Navillus does not perform. Nor was Time Square created as a sham transaction for the purpose of evading Navillus' union obligations. *Id.* Navillus remains a growing and diversified

construction company that continues to perform concrete superstructure work and make

substantial payments to the Plaintiff Funds. *Newspaper Guild*, 261 F.3d at 303 (alter ego

doctrine "usually comes into play when a new legal entity has replaced the predecessor"). The

trial evidence will not support a finding that Time Square was Navillus' disguised or sham

continuance, and the claims of the Plaintiff Funds must be denied.

## VI.   PLAINTIFFS HAVE NO VIABLE CLAIMS
## AGAINST KEVIN INDIVIDUALLY

Kevin is not a "controlling corporate official" of Navillus. First and foremost, absent a

finding that Time Square is an alter ego of Navillus, Kevin, as the sole owner of only Time

Square, cannot be individually liable under ERISA for Navillus' pension obligations. *See A.W.

Farrell*, 2012 WL 4092598, at *17.

In addition, Kevin has no personal involvement in the alleged wrongdoing. Kevin

resigned from Navillus in 2006 when he started Time Square. Since then, Kevin has had no

involvement in the management, day-to-day operations or any of the business affairs of Navillus.

Although Kevin officially sold all of his shares in Navillus to Donal in January 2015, Kevin had

been absent from all Navillus operations since 2006. Kevin made no representations and had no

involvement in Navillus' contributions to the union pension funds or how Navillus conducts its

payroll. *A.W. Farrell*, 2012 WL 4092598, at *17. Plaintiffs will not demonstrate that Kevin has

or at any relevant time had the requisite authority at Navillus to be a "controlling corporate

official" of Navillus or have any individual liability for payment of any fund contributions.

Plaintiffs will not establish at trial that Kevin ever engaged in any fraudulent conduct by

(1) making a material false representation or omission of fact, (2) with knowledge of its falsity

and with the intent to defraud, (3) resulting in reasonable reliance, and (4) with damages

resulting to the plaintiff funds. *Cement and Concrete Workers Dist. Council Welfare Fund,*

19

*Pension Fund, Legal Services Fund and Annuity Fund v. Lollo*, 35 F.3d 29, 33 (2d Cir. 1994); *see also A.W. Farrell*, 2012 WL 4092598 at *17 (holding that, in the absence of finding sufficient evidence to impose alter ego liability on the corporate defendants, no rational trier of fact could conclude defendants had an intent to defraud); *Trustees* of *the Plumbers and Pipefitters National Pension Fund v. De-Con Mech. Contractors, Inc.*, 896 F. Supp. 342, 347 (S.D.N.Y. 1995) (granting defendants' motion to dismiss where the plaintiffs gave no indication as to the "frequency of the alleged underpayments, to whether there was a pattern, or if the individuals involved knew of the underpayments" and there was no showing of "specific misstatements or omissions by each of these individuals").  Plaintiffs will not prove that Kevin made a material false representation or omission of an existing fact in order to avoid paying benefit fund contributions.

## VII.  THE 2009 AGREEMENT PRECLUDES PLAINTIFFS FROM CLAIMING TIME SQUARE IS AN ALTER EGO OF OR JOINT OR SINGLE EMPLOYER WITH NAVILLUS

The plaintiff funds are in privity with their respective unions.  The plaintiff funds exist only because of the unions' collective bargaining agreements.  The plaintiff funds receive contributions from employers only by virtue of the unions' collective bargaining agreements. (Stipulated Fact D4.)

"Generally, a nonparty to a prior litigation may be collaterally estopped by a determination in that litigation by having a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation."  *D'Arata v. New York Central Mutual Fire Insurance Co.*, 76 N.Y.2d 659, 664 (1990).

20

The instant action arises out of the same transaction resolved in the Scheindlin Decision, the creation of Time Square.  This action, and certainly any evidence propounded by plaintiffs, relating to a period prior to the date of the Scheindlin Decision and the 2009 Agreement, are barred by the doctrines of collateral estoppel and res judicata.  Nationwide Mutual Insurance v. U.S. Underwriters Insurance Co., 2017 NY Slip Op 04774 (June 13 2017) (1ˢᵗ Dep't).

The Scheindlin Decision became final because of the 2009 Agreement and subsequent withdrawal of the appeal.  "General expressions that only final judgments can ever have collateral estoppel effect are considerably overstated." *Kurlan v. Commissioner*, 343 F.2d 625, 630 (2d Cir. 1965).

> Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

*Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961) (emphasis added).

*See also*, *United States v. Walker*, No. 16 CR. 567 (JSR), 2017 WL 877325, at *2 (S.D.N.Y. Mar. 5, 2017).

The Scheindlin Decision was not avowedly tentative.  "[B]ased on the totality of the circumstances . . . [Time Square and Navillus] are not so intertwined that they can be considered alter egos." *Time Square v. Mason Tenders*, No. 07 CIV. 7250 (SAS), 2008 WL 55116, at *6. In *Mason Tenders*, there was discovery, both parties filed written submissions, proceedings before Judge Scheindlin took place, and Judge Scheindlin issued a well-reasoned decision.  *See United States v. Walker, supra.*  The unions in *Mason Tenders* had the opportunity to obtain appellate review and, in fact, filed a notice of appeal, but chose to withdraw their appeal in favor

of a settlement by which they conceded, together with the other unions whose funds are Plaintiffs here, that at least through the end of 2010 it has already been concluded that Time Square was not an alter ego of Navillus.

### Conclusion

As the courts and the NLRB have consistently stated, the most critical factor in determining alter ego, single or joint employer status, or a double-breasted operation is centralized control over labor relations.  The Plaintiffs here will not establish at trial the existence of centralized control over labor relations with respect to Time Square and HDK on the one hand and Navillus (or ACS) on the other hand.  Nor will Plaintiffs prove any of the other elements required to hold Time Square liable in this action.

Dated: New York, New York
      July 7, 2017

                                 Respectfully submitted,

                                 Putney, Twombly, Hall & Hirson LLP
                                 *Attorneys for Time Square Construction, Inc., HDK Construction, LLC and Kevin O'Sullivan*

                                 By        s/Philip Kalban
                                      Philip H. Kalban (PK7271)

                                 521 Fifth Avenue
                                 New York, New York 10175
                                 Tel: (212) 682-0020
                                 Fax: (212) 682-9380
                                 pkalban@putneylaw.com